IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FEC HELIPORTS, LLC | CIVIL ACTION NO. 2:15-cv-04827 |
| VERSUS | JUDGE MARTIN FELDMAN |
| HORNBECK OFFSHORE OPERATORS, LLC | MAGISTRATE WILKINSON |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

NOW COMES, defendant, Hornbeck Offshore Operators, LLC ("HOO"), who submits the following Answer, Affirmative Defenses, and Counterclaim in response to the Complaint filed herein by plaintiff, FEC Heliports, LLC ("FEC"):

### ANSWER

1.

HOO admits the allegations of paragraph 1.

2.

HOO admits that it operates the HOS Bayou, IMO number 9647681, but lacks sufficient information to admit or deny that the HOS Bayou will be located within this district during the pendency of this action.

3.

HOO admits that it operates the HOS Riverbend, IMO number 9647679, but lacks sufficient information to admit or deny that the HOS Riverbend will be located within this district during the pendency of this action.

4.

Paragraph 4 states a legal conclusion which does not require a response.  To the extent a response is required, HOO does not contest jurisdiction or venue.

5.

HOO denies the allegations of paragraph 5.

6.

HOO admits that it entered agreements with FEC for the design, manufacture, and installation of helidecks[1] on the HOS Bayou and the HOS Riverbend, but denies the remaining allegations of paragraph 6.

6(a).[2]

HOO admits that it refused to pay certain invoices, but denies that the amounts charged were actually owed by HOO or due to FEC for reasons that will be shown at a trial of this matter.

7.

HOO admits that it did not pay the June 18, 2014, and May 5, 2015, invoices on the M/V Bayou; however, such non-payment was proper for reasons that will be shown at a trial of this matter.  The sums invoiced by FEC are not owed by HOO.

---

[1]     FEC inadvertently uses the word "heliport" instead of "helideck" throughout the Complaint.

[2]     FEC erroneously numbered two consecutive paragraphs as 6 in its Complaint.  To avoid confusion, HOO is referencing the second paragraph 6 as 6(a).

8.

HOO admits that it did not pay the May 5, 2015, invoice on the M/V Riverbend; however, such non-payment was proper for reasons that will be shown at a trial of this matter. The sums invoiced by FEC are not owed by HOO.

9.

HOO admits that FEC sent HOO the letter marked as Exhibit "A." The remaining allegations of paragraph 10 are denied, and HOO denies that it owes FEC for the sums invoiced for reasons that will be shown at a trial of this matter

10.

HOO admits that it did not pay the amount demanded in Exhibit "A," but denies that the amount demanded is owed to FEC for reasons that will be shown at a trial of this matter.

11.

The allegations of paragraph 12 are denied. HOO specifically denies that it owes any amounts to FEC and further denies that FEC has complied with the requirements of 46 U.S.C. § 31342 necessary to perfect maritime liens on the HOS Bayou or HOS Riverbend.

12.

The final unnumbered paragraph is a prayer for relief which does not require a response. To the extent that a response is required, HOO denies that FEC is entitled to any of the relief sought therein.

**AFFIRMATIVE DEFENSES**

HOO further asserts the following affirmative defenses in response to the Complaint:

1.

The Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6).

2.

FEC has not complied with the requirements of 46 U.S.C. § 31342 *et seq.* necessary to perfect maritime liens on the HOS Bayou or HOS Riverbend.

3.

FEC failed to perform all of the contracted work.

4.

FEC defectively performed the contracted work.

5.

HOO was required, at its cost, to have FEC's contracted work completed and corrected by others.

6.

FEC has breached its contracts with HOS and caused significant damages to HOS.

7.

HOO incurred significant damages as a result of FEC's breaches, including but not limited to increased costs of completion, overhead, and damages for delay, including losses in the performance of prospective contracts with its customers, and/or other damages that will be shown at trial, all as a result of FEC's breaches.

4

8.

FEC overcharged HOO by billing for shipping costs when those costs were included in FEC's contracted scope of work under the purchase orders.

9.

FEC overcharged HOO for an all-aluminum helideck design despite that it did not deliver this design, which was changed to steel, at a significant savings.

10.

HOO is entitled to set off or reduction of liability against any recovery FEC obtains for amounts owed by FEC to HOO, which said amounts exceed any demand made by FEC.

11.

FEC's claims are barred by the doctrines of estoppel, prematurity, waiver, satisfaction, ratification, set-off, compensation, and/or unclean hands.

12.

FEC has failed to mitigate the damages, if any, which it may have sustained.

13.

FEC is barred from recovery as a result of its breaches of the parties' agreements.

14.

HOO pleads any and all affirmative defenses available under any and all applicable state and/or federal law and reserves the right to amend this Answer to assert additional affirmative defenses upon the pleading of operative facts giving rise to their application.

15.

HOO further reserves the right to aver and allege any other additional affirmative defenses which may become known or apparent during the course of discovery.

## COUNTERCLAIM

And now, assuming the role of Plaintiff-in-Counterclaim, Hornbeck Offshore Operators, LLC ("HOO"), asserts the following Counterclaim against, Defendant-in-Counterclaim, FEC Heliports, LLC ("FEC"):

## PARTIES

1.

HOO is a Delaware limited liability company with its principal place of business located in Covington, Louisiana.

2.

FEC is an Ohio limited liability company doing business in the State of Louisiana.

## JURISDICTION AND VENUE

3.

Jurisdiction is proper under 28 U.S.C. § 1333.  Venue is proper under 28 U.S.C. § 1391(b).

## BACKGROUND

### The Contracts

4.

On August 1, 2013, FEC and HOO entered a two-year Master Service Agreement ("MSA"), which governs all work performed by FEC for HOO under any subsequent work or

purchase orders.  The terms of the MSA are incorporated into any subsequent work or purchase orders between the parties.

5.

Under the MSA, HOO is not obligated to pay for any work until FEC has complied with all of its obligations and the work is accepted by HOO as fully complying with all of the terms, conditions, specifications and requirements of the MSA and purchase order.

6.

The MSA permits HOO to withhold or offset sums owed to HOO, including reasonable overhead, from sums due to FEC.

7.

In the event of FEC's failure to perform, HOO is authorized to have the work completed by others and to hold FEC liable for any increased costs of completion and delay, including any losses HOO incurs in the performance of its contracts with its customers.

8.

On November 19, 2013, HOO and FEC also entered a Pricing Agreement which provides guaranteed pricing for additional helidecks, including all Helideck Materials, Structural Packages, and installations ordered by HOO from FEC for the years 2014, 2015 and 2016.  The Pricing Agreement provides that FEC shall perform all Work under the terms of the Purchase Order and any terms set forth in the MSA.

## HOS Riverbend (PO 2155135)

9.

On November 19, 2013, in accordance with the Pricing Agreement and MSA, HOO and FEC entered purchase order #2155135 for a helideck and associated services and equipment, which was ultimately installed on the HOS Riverbend ("PO 2155135").[3]

10.

PO 2155135 provides:

6) Packaging & Shipment.  **The price of goods includes all applicable costs and charges for packing, loading, shipping** and insurance, all of which shall be arranged or performed by Seller in a manner that meets carrier requirements and safeguards goods against damage and loss. … (emphasis added).

11.

PO 2155135 further provides that the party prevailing in any dispute regarding the PO shall be entitled to recover reasonable attorney fees and costs.

12.

FEC issued three invoices to HOO in connection with PO 2155135, the third of which, invoice number 22760 dated May 5, 2015, was for $263,962.50 and was comprised of $30,000 for shipping; $225,000 for installation; and $8,962.50 for bolt changeout.

13.

HOO paid all but the $30,000 shipping on Invoice 22760 because shipping charges are not recoverable under the terms of PO 2155135, ¶ 6, quoted above.

---

[3]   On November 19, 2013, HOO and FEC entered purchase order #2155159 for a helideck design for a 320 class vessel, but FEC never performed the contract.

8

**HOS Bayou (PO 2155141)**

14.

On November 21, 2013, FEC and HOO entered purchase order #2155141 for the installation of an aluminum helideck on the HOS Bayou ("PO 2155141").

15.

PO 2155141 included the following items:   (1) installation of helideck at $225,000; (2) ABS/design fees totaling $66,000; and (3) materials for helideck and support structure at $938,000.

16.

PO 2155141 required FEC to deliver an acceptable design package within 5 to 6 weeks of the order and for delivery of the materials and commencement of fabrication of the helideck within 56 days from the date of the order.

17.

The PO provided for an aluminum helideck, with aluminum supports and aluminum vertical supports.

18.

The materials were to be delivered and the work performed at Conrad Shipyard, LLC ("Conrad").

19.

PO 2155141 specifies that the helideck design "must meet ABS Class requirements" and must "meet or exceed the current CAP 437, as required, for offshore or shipboard heliport design for (1) 73' octagon helipad designed to support the weight of an S-92."

20.

It further specifies that "[i]t shall be Seller's sole responsibility to obtain all required certifications and ratings for the goods from regulatory agencies or other third parties and to provide documentation of compliance with such standards to Company in a timely manner."

21.

PO 2155141 further provides that the party prevailing in any dispute regarding the PO shall be entitled to recover reasonable attorney fees and costs.

22.

FEC was not able to deliver its initial all-aluminum support design sketch until January 3, 2014, which was 45 days after the purchase order was issued and 3 days after the deadline to deliver the design.

23.

In February 2014, FEC additionally advised HOO that it could not deliver an all-aluminum helideck.

24.

By the end of February, which was well past both the design delivery and materials delivery deadlines, FEC still had not produced a viable design.

25.

FEC delivered a steel solution design on March 7, 2014, and subsequently proposed a $75,000 price reduction in materials.   Facing further delays, HOO reluctantly

accepted the steel design on or about March 15, 2014, but never agreed that $75,000 was an adequate credit to compensate the cost differential for using steel instead of aluminum.

26.

A reasonable credit for the steel substitution should have been in excess of $230,000 per helideck based upon FEC's original quotes. FEC refused to modify the PO to reflect any reduction in materials cost.

27.

FEC did not submit drawings to ABS for approval until April 14, 2014, some 15 weeks behind schedule.

28.

Despite that no ABS approval letters had been provided to HOO, FEC invoiced HOO $1,004,000 on June 18, 2014, invoice #21493.  Notably, FEC's invoice includes the full amount for aluminum materials without any reduction in price or credit for the change from aluminum to steel.  Despite demand from HOO, FEC never corrected the invoices.

29.

FEC began delivery of the helideck materials packages to Conrad in late May 2014, and assembly of the helideck commenced in June 2014, more than 5 months behind schedule.

30.

When the ABS approval letters (dated May 2014) finally were received by HOO in September 2014, more than 4 months after they were issued by ABS, HOO learned that FEC had failed to instruct ABS to certify the designs for compliance with CAP 437.

31.

FEC initially responded, incorrectly, that although ABS had verified that the design was CAP 437 compliant, it was ABS' "policy" not to include CAP 437 certification on any of their letters.  FEC also represented that the design was CAP 437 compliant, which was later determined to be inaccurate.

32.

Justifiably concerned with the viability of FEC's design, HOO obtained an independent engineering analysis.

33.

The independent engineering analysis concluded that the FEC design was insufficient.

34.

On October 8, 2014, HOS received from FEC an ABS CAP 437 Non-Compliance Letter.

35.

In order to facilitate the immediate completion of the helideck and because the vessel could not sail due to concerns over the helideck's structural integrity, the parties agreed that Conrad would perform additional services to implement design modifications performed by an independent engineering firm that HOO was forced to obtain.

36.

When Conrad attempted to reach an agreement with FEC for the cost of this additional work, however, FEC reversed its prior position and refused to approve Conrad's cost proposal.

37.

Although FEC admitted that it was responsible for the design deficiencies which necessitated the third party design modifications, it nonetheless demanded that HOO enter a contract modification to permit HOO to negotiate directly with Conrad.

38.

HOO promptly advised FEC that FEC's conduct was in breach of its obligations and HOO would mitigate its damages by having FEC's work performed by others.  HOO further advised that, as a result of FEC's breaches, it would suffer and was suffering damages for which it would hold FEC liable.

39.

HOO subsequently authorized Conrad to perform the additional work necessary to make the helideck ABS and CAP 437 compliant in accordance with the revised design modifications provided by an independent third party retained by HOO.

40.

As a result of FEC's faulty design, HOO also was forced to mitigate its losses by retaining other vendors to perform FEC's initial work scope, including but not limited to a bolt analysis and the provision of additional and upgraded strength bolts.

**Breach of Pricing Agreement**

41.

On January 13, 2015, HOO ordered two materials packages and two structural packages under the prices guaranteed in the Pricing Agreement for installation aboard vessels that where under construction at the time.

13

42.

FEC refused to honor these orders, thereby breaching its obligations to HOO and forcing HOO to obtain these items elsewhere at an increased cost, which amounts will be shown at trial and for which FEC is liable.

**FEC's Demand and HOO's Response**

43.

Despite the foregoing breaches by FEC, FEC made demand upon HOO on or about July 30, 2015, for payment of $30,000 in shipping charges in connection with the HOS Riverbend (PO 2155135), and $1,361,829.23 in connection with the HOS Bayou (PO 2155141).

44.

HOO responded to FEC's demand letter on or about September 17, 2015, advising that, as a result of the foregoing breaches by FEC, HOO incurred significant damages well in excess of any sums demanded by FEC and that it would hold FEC liable for such losses.

**COUNT I:  DECLARATORY JUDGMENT**

45.

HOO adopts, realleges, and incorporates the preceding allegations of its Counterclaim as if copied herein *in extenso*.

46.

"In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

sought."  28 U.S.C. § 2201(a).  "Any such declaration shall have the force and effect of a final

judgment or decree and shall be reviewable as such."  *Id.*

47.

There is an actual and substantial controversy between the parties as to whether

FEC may demand payment in full on the HOS Riverbend (PO 2155135) and the HOS Bayou

(PO 2155141) despite that:

> (1) FEC failed to perform all of the contracted work;

> (2) FEC defectively performed the contracted work;

> (3) HOO was required, at its cost, to have FEC's contracted work completed and corrected by others;

> (4) HOO incurred significant damages as a result of FEC's breaches, including but not limited to increased costs of completion, overhead, and damages for delay, including losses in the performance of prospective contracts with its customers, all as a result of FEC's breaches;

> (5) FEC overcharged HOO by billing for shipping costs when those costs were included in FEC's contracted scope of work under the purchase orders;

> (6) FEC overcharged HOO for an all-aluminum helideck design despite that it did not deliver this design, which was changed to steel, at a significant savings; and

> (7) The parties' contracts do not require HOO to pay for work which has not been accepted and it permits HOO to withhold or offset sums owed to HOO from any amounts alleged to be owed by FEC.

> (8) FEC breached the Pricing Agreement, causing HOO additional damages.

48.

These controversies can and should be resolved by judicial declaration pursuant to

28 U.S.C. § 2201(a), which should have the force and effect of a final judgment, that FEC is not

entitled to the sums it has demanded in connection with the HOS Riverbend (PO 2155135) or the

15

HOS Bayou (PO 2155141), that HOO owes to FEC nothing in connection with same, and that FEC is liable to HOO for damages it caused to HOO, that will be shown at a trial of this matter.

### COUNT II:  BREACH OF CONTRACT

49.

HOO adopts, realleges, and incorporates the preceding allegations of this Counterclaim, as if copied herein *in extenso*.

50.

The MSA, Pricing Agreement, and Purchase Orders are binding contracts.

51.

HOO complied with all of its obligations under the contracts.

52.

As explained in detail above, and as will be proven at a trial of this matter, FEC breached the parties' contracts in numerous ways, including but not limited to failing to timely perform, failing to complete all contracted work, deficiently performing the contracted work, and overcharging HOO.

53.

As will be shown at trial, HOO incurred significant damages and expenses as a result of FEC's breaches of contract for which FEC is liable.

54.

Under the contracts, HOO is entitled to offset these damages, which are in excess of  any amounts which may be owed to FEC.  HOO also is entitled to offset against any amount which may be owed to FEC the amounts which FEC overcharged HOO, including but not

limited to shipping charges which were part of the contracted work and for the change in design from aluminum to steel which resulted in a significant savings in cost of materials.

55.

Under the contracts, HOO is also entitled to recover reasonable attorney's fees and costs.

**WHEREFORE**, Hornbeck Offshore Operators, LLC, prays that this Answer, Affirmative Defenses, and Counterclaim be deemed good and sufficient and, that after due proceedings are had, the Complaint filed by FEC Heliports, LLC against Hornbeck Offshore Operators, LLC be dismissed with prejudice at its costs and that judgment be rendered in favor of Hornbeck Offshore Operators, LLC against FEC Heliports, LLC for all relief requested in the Counterclaim including but not limited to damages, attorney's fees, legal interest, and all costs in the amounts shown at trial, as well as such other legal and/or equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Joelle F. Evans
Kyle Schonekas, 11817
Joelle F. Evans, 23730
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, MCGOEY &
MCEACHIN, L.L.C.
909 Poydras Street, Ste. 1600
New Orleans, Louisiana  70112
(504) 680-6050
kyle@semmlaw.com
joelle@semmlaw.com
andrea@semmlaw.com

Attorneys for Hornbeck Offshore Operators, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 27th day of October, 2015, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Joelle F. Evans* _____
  JOELLE F. EVANS