IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FEC HELIPORTS, LLC | CIVIL ACTION NO. 15-4827 |
| VERSUS | SECTION F |
| HORNBECK OFFSHORE OPERATORS, LLC | MAGISTRATE 2 |
| | Pursuant to FRCP Rule 9(h) ADMIRALTY |

## ANSWER TO COUNTERCLAIM

FEC Heliports, LLC ("FEC Heliports") answers Hornbeck Offshore Operators, LLC's ("Hornbeck") Counterclaim as follows:

1. Paragraph 1 is denied for lack of sufficient information or knowledge to justify a belief in the truth thereof.

2. Paragraph 2 and 3 are admitted.

3. Paragraph 4 is admitted only to the extent that FEC Heliports and Hornbeck signed an August 1, 2013 Master Service Agreement; the remainder of the paragraph is denied inasmuch as the Master Service Agreement is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

4. Paragraphs 5 through 7 are denied inasmuch as the Master Service Agreement is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

5. Paragraph 8 is admitted only to the extent that FEC Heliports and Hornbeck signed a Pricing Quote and Pricing Agreement on November 19, 2013; the remainder of the paragraph is denied inasmuch as the Pricing Quote and Pricing Agreement are the best evidence of their terms and conditions, which are expressly pled as if copied herein in their entirety.

6. Paragraph 9 is admitted only to the extent that FEC Heliports signed a purchase order referencing the M/V HOS Riverbend on November 21, 2013; the remainder of the paragraph is denied inasmuch as the purchase order is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

7. Footnote 3 is denied.

8. Paragraphs 10 and 11 are denied inasmuch as the purchase order is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

9. Paragraph 12 is admitted.

10. Paragraph 13 is admitted only to the extent that Hornbeck failed to pay $30,000 of the invoiced amount; the remainder of the paragraph is denied.

11. Paragraph 14 is admitted only to the extent that FEC Heliports signed a purchase order referencing the M/V HOS Bayou on November 21, 2013; the remainder of the paragraph is denied inasmuch as the purchase order is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

12. Paragraph 15 through 17 are denied inasmuch as the purchase order is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

13. Paragraph 18 is denied to the extent that the loaction for delivery and work were not specified in the purchase order. Hornbeck did not notify FEC Heliports that Conrad Shipyard, LLC would be the location for shipment and work performance until April 2014.

14. Paragraphs 19 through 21 are denied inasmuch as the purchase order is the best evidence of its terms and conditions, which are expressly pled as if copied herein in their entirety.

15. Paragraph 22 is denied.

16. Paragraph 23 is admitted only to the extent that FEC Heliports' inability to to design an all-aluminum deck was due to Hornbeck's restrictions on the locations and number of Structural support locations which such restrictions were not made known to FEC Heliports by Hornbeck until after FEC Heliports issued its price quote and entered into the purchase order and pricing agreement with Hornbeck.

17. Paragraph 24 is denied.

18. Paragraph 25 is admitted except to deny that a discussed price reduction for materials is relevant inasmuch as subsequent design changes demanded by Hornbeck rendered the discussed price reduction unwarranted.

19. Paragraph 26 is denied; specifically, it is denied that $230,000 is a resonable credit and it is denied that Hornbeck ever requested such a credit.

20. Paragraph 27 is admitted only as to the date of sumittal, it is denied that there was a schedule for submittal or that FEC Heliports was 15 weeks behind such a schedule.

21. Paragraph 28 is admitted to the extent that FEC Heliports invoiced Hornbeck for materials shipped to the jobsite, which shipment was made after Hornbeck demanded FEC Heliports begin installation without ABS design approval. It is denied that Hornbeck demanded a price reduction.

22. Paragraph 29 is admitted except to deny that FEC Heliports was behind schedule or that there was a schedule. FEC Heliports began material shipment within a few weeks of Hornbeck informing FEC Heliports of the shipping and work location.

23. Paragraph 30 is denied; specifically, it is denied that ABS issued approval to FEC Heliports in May 2014 (approval for the electrical design was issued in May of 2014. ABS issues

3

subsequent approvals for various aspects of the design through December 2014), and it is denied that the purchase order required ABS certification of CAP 437.

24. Paragraph 31 is denied.

25. Paragraph 32 is denied for lack of sufficient information or knowledge to justify a belief in the truth thereof; it is specifically denied that Hornbeck's concerns, if any, were justified.

26. Paragraph 33 is denied for lack of sufficient information or knowledge to justify a belief in the truth thereof.

27. Paragraph 34 is admitted.

28. Paragraphs 35 through 40 are denied.

29. Paragraph 41 is denied inasmuch as the Hornbeck orders were for packages that did not meet the specifications in the subject quote, purchase order and pricing agreement.

30. Paragraph 42 is denied. FEC Heliports did not breach its obligations and is not liable to Hornbeck for any amount inasmuch as the orders did not meet the specifications in the subject quote, purchase order and pricing agreement.

31. Paragraph 43 is admitted except to deny that FEC Heliports breached any obligations or agreements with Hornbeck.

32. Paragraph 44 is admitted.

33. Paragraph 45 does not require a response.; to the exetent one is required, FEC Heliports denies the paragraph.

34. Paragraph 46 does not require a response.; to the exetent one is required, FEC Heliports denies the paragraph.

35. Paragraph 47 and all of its subparts are denied.

36. Paragraph 48 is denied.

37. Paragraph 49 does not require a response.; to the exetent one is required, FEC Heliports denies the paragraph.

38. Paragraph 50 is admitted.

39. Paragraphs 51 through 55 are denied.

First Affirmative Defense

40. The counterclaim fails to state a claim upon which relief can be granted.

Second Affirmative Defense

41. FEC Heliports denies any liability to Hornbeck.

Third Affirmative Defense

42. Hornbeck failed to mitigate its damages, if any.

Fourth Affirmtive Defense

43. The Master Service Agreement, Pricing Agreement, Purchase Orders, and Quote are the best evidence of their terms and conditions, which are expressly pled as if copied herein in their entirety.

Fifth Affirmative Defense

44. Hornbeck's damages, if any, were caused by the fault of other parties on non-parties for whom FEC Heliports is not responsible.

Sixth Affirmative Defense

45. Hornbeck's damages, if any, were caused by the negligence or fault of Hornbeck.

Further answering the allegations of Hornbeck's Counterclaim, FEC Heliports also assert by way of additional affirmative defense that:

46. FEC Heliports and Hornbeck entered into a Master Service Agreement, Pricing Agreement and two purchase orders for helidecks based on and referencing an October 31, 2013 FEC

Heliports Quote ("Quote"). Hornbeck drafted and provided the terms of the Master Service Agreement and the Purchase Orders.

47. The Quote specified prices based on stated material and design specifications.

48. The Quote contained a design specification for an all-aluminum support structure.

49. The Quote listed items **not** included in the pricing, listing, in part, as follows:

    - structural steel work supporting the helidecks or platforms below deck or attaching to the vessel
    - crane service or offloading
    - shipping to the jobsite, this will be priced on an open book basis, final shipping plus 10%

50. Based on representations from Hornbeck, the Quote assumed no restrictions on the placement and number of structural support locations for attaching the helideck to the vessel.

51. Subsequent to entering into the purchase orders for the M/V HOS Bayou and M/V HOS Riverbend, Hornbeck restricted the number and location of structural support locations, making an all-aluminum design unfeasible and requiring additional structural and material changes to the original helideck design not contained in the Quote.

52. These structural and material changes caused delays in ABS certification, fabrication and installation.

53. Despite the changes, FEC Heliports began preparing materials to be shipped to begin installation as soon as Hornbeck identified Conrad Shipyard as the location for the work in April 2014.

54. Hornbeck insisted FEC Heliports begin work on the heliports prior to ABS design approval.

55. At some time, unknown to FEC Heliports, Hornbeck retained the services of another engineering firm to review an comment on FEC Heliports' design.

56. Although Hornbeck alleges the engineering firm was retained to revise the heliport design to meet ABS certification, the changes proposed by the engineering firm were originally rejected by ABS.

57. ABS ultimately accepted design changes proposed by FEC Heliports to get ABS approval.

58. The design changes required for ABS certification were directly related to the restrictions Hornbeck placed on the number and location of structural support locations.

59. Hornbeck refused to pay for the helideck after it was installed by FEC Heliports on the M/V HOS Bayou, alleging FEC Heliports is liable to Hornbeck for the cost of delays and lost income despite the language in Hornbeck's own Master Service Agreement stating, in part, as follows:

> neither [Hornbeck] nor [FEC Heliports] shall be liable to the other for any incidental, special, consequential or other indirect damages, including **loss of profit or revenue**, lost production or **cost of delay** . . . regardless of the cause, whether based on tort (including negligence), breach of contract, strict liability or otherwise. (emphasis added)

60. Subsequent to ABS certification and the completion of the helideck on the M/V HOS Bayou, Hornbeck requested FEC Heliports provide a quote to change out the bolts on the helideck. The bolt change-out was unrelated to and not required for ABS certification. FEC Heliports provided Hornbeck the requested quote, however, Hornbeck did not engage FEC Heliports services to perform the work.

61. In December 2015, FEC Heliports provided a new pricing structure for helidecks moving forward which incorporated the changes to the specifications in the Quote.

62. Despite the new pricing structure, in January 2015, Hornbeck requested the purchase of two additional helidecks under the old pricing structure. Because the design and material specifications for the helidecks differed substatnially from the specifications in the Quote upon which the old Pricing Agreement was based, FEC Heliports declined to accept the two additional orders.

63. Hornbeck has received FEC Heliports' services and a helideck on the M/V HOS Bayou for which it has not paid. Hornbeck, therefore, has failed to abide by its agreements with FEC Heliports and has been unjustly enriched by its failure to pay for a product and services which it has used and from which it continues to derive benefit.

64. Hornbeck also failed to pay shipping costs related to the M/V HOS Riverbend for which it is explicitly liable under the terms of the Quote which Hornbeck referenced and incorporated into its own purchase order.

    FEC Heliports requests the Court:

       1. dismiss the claims of the Plaintiff-in-Counterclaim, Hornbeck, with prejudice;

       2. award FEC Heliports its costs plus reasonable attorney's fees; and

       3. grant FEC Heliports such other relief that is just.

                  Respectfully submitted,

                  PLAUCHÉ & CARR, L.L.P.

              BY: _s/ George C. Plauché_
                  GEORGE C. PLAUCHÉ (23260)
                  130 Audubon Blvd., Suite 102 (70503)
                  P.O. Drawer 52806
                  Lafayette, LA 70505
                  Telephone: (337) 237-1213

Facsimile: (337) 233-9095

ATTORNEYS FOR FEC HELIPORTS, LLC

CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record in this matter in accordance with the Federal Rules of Civil Procedure on this, the 10th day of December, 2015.

s/ George C. Plauché