UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FEC HELIPORTS, LLC                          CIVIL ACTION

V.                                          NO. 15-4827

HORNBECK OFFSHORE OPERATORS, LLC            SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are defendant's two motions for partial summary judgment and plaintiff's cross motion for summary judgment. For the following reasons, the defendant's two partial motions for summary judgment as to plaintiff's breach of the Pricing Agreement, the Master Service Agreement, and Purchase Order 2155141 are GRANTED and plaintiff's cross motion for summary judgment is DENIED.

**Background**

FEC Heliports is a company that designs, manufactures, and installs heliports. FEC and Hornbeck Offshore contracted for FEC to design, manufacture, and install heliports on two of Hornbeck's offshore vessels, the HOS Bayou and the HOS Riverbend.

As part of the contract for these services, the parties entered into multiple agreements to stipulate terms for FEC's services. First, the parties entered into a two-year Master Service Agreement (MSA) in October 2013. The MSA governed all work FEC performed for Hornbeck on any future purchase orders during that time. The MSA included a timeliness clause and FEC promised that:

1

Its Work shall be (i) free of defects in workmanship and materials, (ii) performed in good and workmanlike manner consistent with applicable industry standards and practices and utilizing sound engineering and/or technical principals where applicable, (iii) performed with new, merchantable, and fit materials, and (iv) in full accordance with this Agreement, the Work Order, and [Hornbeck's] specifications.

If FEC breached any of the MSA obligations, Hornbeck could demand FEC to correct the issues without any additional cost to Hornbeck; or, Hornbeck could force FEC to pay for a third party to complete the work.

Second, FEC and Hornbeck entered into a Purchase Order (PO) for the helideck. The particular PO at issue here is PO 2155141, which was the order for the HOS Bayou helideck. The PO explicitly states that the design must meet both American Bureau of Shipping (ABS) and CAP 437 requirements. These are two industry standards for helideck specifications that Hornbeck wanted its helidecks to fulfill, namely because Hornbeck wanted the vessel suitable for international use. The PO made it FEC's responsibility to obtain any necessary certifications to ensure that its design for the helideck satisfied the ABS and CAP 437 requirements. Finally, the PO provided that FEC deliver the design to Hornbeck within 5-6

weeks and then the helideck and structure no later than 56 days from the date of the PO.

Finally, FEC and Hornbeck agreed to a Pricing Agreement. The Pricing Agreement guaranteed pricing for additional helidecks Hornbeck ordered for the following three years, 2014, 2015, and 2016. The Pricing Agreement incorporated the MSA terms, as well.

Once FEC began work on the helideck designs, the parties' contentions come into play. After months of delay, Hornbeck received an ABS certification letter in September 2014. However, the letter did not mention or indicate whether the helideck was CAP 437 compliant; Hornbeck employees contacted FEC personnel to inquire about this issue. FEC told Hornbeck that ABS does not issue CAP 437 compliance certifications. Then, a few days later FEC learned that it could pay ABS to complete a CAP 437 compliance check; FEC paid for this certification check. The inquiry revealed that the helideck FEC provided for the HOS Bayou was, in fact, not CAP 437 compliant. This revelation led to all parties, including ABS personnel, to physically visit the helideck on October 20, 2014. During this visit, ABS revoked its prior approval of the design.

The record reveals that the President of FEC's parent company admitted that FEC's design had significant structural flaws. An FEC project engineer testified that the software FEC used to design the helideck was insufficient to perform the analysis necessary to

design a compliant helideck. Hornbeck notified FEC of the consequences caused by the delay in delivering a compliant helideck. Hornbeck additionally hired a third party to create a design to address the issues; FEC used the design as part of its submittal to ABS for the compliance check. However, after FEC agreed to use the plans and ordered the necessary steel to complete the project, FEC refused to approve the necessary work to incorporate the third party's design at the shipyard. This refusal caused Hornbeck to hire a third-party vendor to complete the work, as allowed in the MSA. The MSA stipulates, and FEC admits, that FEC had the responsibility to engage the third-party design company to address the non-compliant issues and effect the changes necessary. Even with that admission, FEC has not reimbursed Hornbeck for these expenditures. The compliance failures caused by FEC's deficient design are, Hornbeck alleges, breaches of the MSA, the PO 2155141 and the Pricing Agreement.

Additionally, Hornbeck alleges that FEC breached the Pricing Agreement when FEC did not honor Hornbeck's order of two additional helidecks on January 13, 2015. The Pricing Agreement obligates FEC to "sell and provide" Hornbeck additional material or structural packages at "rates not to exceed those set forth in the [Pricing Agreement]." However, FEC notified Hornbeck on December 24, 2014 of a proposed new pricing structure, which reflected an increase in rates from those included in the original Pricing Agreement

from November 2013. Hornbeck rejected FEC's attempted pricing change and proceeded to place its order for the two additional helidecks at the prices stipulated in the original Pricing Agreement. The following day FEC rejected Hornbeck's attempted order. Because FEC did not fulfill the two January 2015 purchase orders, FEC in essence obligated Hornbeck to hire a third party to design and install helidecks on the HOS Brass Ring and HOS Briarwood. The third parties provided these services at costs higher than what Hornbeck would have paid had FEC honored the Pricing Agreement terms. Hornbeck's expert claims that if FEC fulfilled the 2015 purchase orders, then FEC should have incurred no more than $1,953,310.26 per helideck. Instead, Hornbeck had to spend an additional $1,854,500.65 on HOS Brass Ring and $1,292,016.94 on the HOS Briarwood; this comes to an estimated $3,146,517.58 in expenditure above what Hornbeck expected to pay under the Pricing Agreement terms.

FEC alleges it worked with Hornbeck throughout the design process and that due to many structural and material changes required to complete the helideck on HOS Bayou, FEC incurred significantly higher costs than it originally quoted. After recognizing that the future projects would be more financially prohibitive than originally contemplated in the Pricing Agreement, FEC acknowledges that it informed Hornbeck of the price increases going forward. FEC contends that the design as originally

contemplated substantially differed from the design that Hornbeck ultimately required, and thus the purpose of the Pricing Agreement was frustrated and deemed invalid. However, the PO clearly contemplates that design services were not finalized.[1] FEC is of the belief that Hornbeck is liable to it for all invoices incurred for the HOS Bayou helideck, but Hornbeck has not paid the balances of the invoices FEC alleges Hornbeck owes.

FEC originally brought this suit against Hornbeck to recover amounts owed to it for work performed on the HOS Bayou and the HOS Riverbend, totaling $1,391,829.22. Hornbeck responded to the complaint with a counterclaim for partial summary judgment for FEC's alleged breach of the Pricing Agreement when it refused to honor the two January 2015 orders at rates provided in the Pricing Agreement. Hornbeck claims damages in the amount of $3,146,517.58 attributable to the breach. FEC responded with a cross motion for summary denying its alleged breach of the Pricing Agreement. Additionally, Hornbeck moves for partial summary judgment that FEC breached the MSA and PO 2155141.

I.

---

[1] PO 2155141 states under "Design Services" that "Design also includes the structural steel members supporting the aluminum structure . . . will attach . . . at locations *yet to the determined*." (emphasis added). Additionally, this section says that "platforms [are to be] designed in either steel *or* aluminum." (emphasis added).

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at

7

trial do not qualify as competent opposing evidence. <u>Martin v.</u> <u>John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

II.

First the Court addresses Hornbeck's motion for summary judgment on FEC's alleged breach of the Pricing Agreement. The parties entered into this Pricing Agreement, which laid out prices for future purchase orders for the years 2014, 2015, and 2016. When FEC created these prices, it based the prices off of the quote used for PO 2155141. When that PO proved to be more expensive than estimated due to changes FEC did not predict, FEC needed a way to cut losses on future purchase orders. That is when it sent a revised Pricing Agreement to Hornbeck in December 2014. However, PO 2155141 had clauses that clearly indicated the parties contemplated changes to the design as the process evolved. Ultimately, FEC realized it made a poor business decision by agreeing to a pricing scheme for years out before it knew what the actual expenses for designing and building a helideck would total.

The basis for the price increase which ultimately led to this motion was the use of a steel, rather than an aluminum, structure and the amount of support points used. FEC alleges that that it thought steel would be cheaper than aluminum; but, it

8

turned out that was not the case. Further, only five or six,[2] not ten, support structures were used. These alleged "changes" in design caused FEC's quote, used for the PO, to be significantly lower than the ultimate costs incurred. However, the record reflects, and the Court acknowledges, that the PO 2155141 specifically anticipated for design changes. Particularly on the decision of the number of support points, PO 2155141 provides that the structural members "will attach . . . at locations *yet to be determined*." (emphasis added). Therefore, FEC cannot rely on the defense that the circumstances surrounding the Pricing Agreement were substantially changed, which thus invalidated the Pricing Agreement.

"The parol evidence rule provides that if the parties to a written agreement assent to a writing as the final and complete expression of the terms of their agreement, evidence of prior or contemporaneous agreements may not be admitted to contradict, vary, or add to the terms of the writing." Am. Jur. Proof of Facts 3d 331 § 2 (1996). FEC alleges that the quote used in the negotiations for the HOS Bayou and PO 2155141 was the basis for setting prices in the Pricing Agreement. It follows, FEC contends, that because the instrument used to set the Pricing Agreement –

---

[2] FEC alleges five support points were used. Hornbeck alleges that FEC's facts are wrong and that six are used. Therefore, the record is unclear; this does not affect the outcome of this motion for summary judgment.

the quote – proved to be considerably inaccurate, FEC should not be liable to Hornbeck to fulfill the Pricing Agreement. There is one fatal flaw in this reasoning. The PO 2155141 is a fully-integrated document that makes no reference to the quote. The Pricing Agreement makes reference to PO 2155141 as a condition to the parties agreeing to the Pricing Agreement's terms. Therefore, because the Pricing Agreement at a minimum references, but seemingly incorporates, PO 2155141, which is a fully-integrated document that does not include the terms of the quote,[3] there is no factual basis to find that the quote is incorporated as a term of the Pricing Agreement. Without the quote being a term of the Pricing Agreement, there are no grounds upon which FEC can rely on the inaccurate quote as a basis for altering the Pricing Agreement as provided for by the parol evidence rule.

The record indicates that FEC admits it sent Hornbeck an updated pricing schedule to override the agreed-upon terms of the Pricing Agreement. FEC attempts to justify this action on the grounds that the Pricing Agreement became invalid when the terms of the quote, used in setting the Pricing Agreement, turned out to be wholly inaccurate. The parol evidence rule bars FEC's reliance

---

[3] PO 2155141 does reference the quote number FEC used to reach the final terms of PO 2155141. However, PO 2155141 does not explicitly incorporate the terms of the quote into the PO.

and accordingly there exists no dispute of material facts on the breach of the Pricing Agreement.

". . . [D]amages awarded for breach of contract should return the party to the position he would have occupied had the contract not been violated." Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 412 (5th Cir. 1982). Had FEC honored the Pricing Agreement, the record indicates that Hornbeck would have incurred $1,953,310.26 per helideck ordered in January 2015. However, Hornbeck spent an additional $1,854,00.64 on HOS Brass Ring and $1,292,016.94 on HOS Briarwood. FEC directly caused Hornbeck to incur these additional costs. As such, under well-established maritime and contract law, Hornbeck is entitled to recover costs to put it in the position it would have been in had FEC not breached the Pricing Agreement. See id.

III.

The Court next turns to Hornbeck's motion for summary judgment for FEC's alleged breach of the MSA and PO 2155141 when it failed to provide a helideck certified under ABS and CAP 437 standards. The MSA required FEC to provide a suitable helideck design, free of defects and meeting all specifications of PO 2155141. PO 2155141 required FEC to deliver a helideck design certified to meet or exceed ABS standards and "the current CAP 437."

Originally, FEC obtained ABS approval but not CAP 437 approval. At that time, FEC informed Hornbeck that ABS did not do

CAP 437 certification. That fact turned out to be untrue. FEC then agreed to have ABS perform the CAP 437 certification. These compliance issues led all parties to visit the HOS Bayou in October 2014. At this visit, ABS revoked its previous approval for the ABS certification. Upon revocation, FEC's design for the HOS Bayou failed to comply with both ABS and CAP 437 standards.

The record indicates that FEC admits its design was flawed. In a deposition, its project engineer stated that, as Hornbeck alleged, the deck of the helideck was moving and that "should not have been occurring." He went on to admit that at the time, FEC began using new software, which turned out to be insufficient to properly create the design needed. Finally, the project engineer admitted that if FEC had properly designed the helideck initially, then Hornbeck would not have had to hire third parties to aid in designing and fabricating a helideck to the contractual specifications.

However, after the deficiencies became apparent, Hornbeck presented FEC with a third party, independent marine engineer, A.K. Suda, Inc. FEC agreed to incorporate Suda's designs in its submission to ABS for approval of both standards. FEC approved the purchase of the additional steel needed to complete the helideck structure. However, FEC would not approve all of the work needed to complete the design in the shipyard. This forced Hornbeck to hire third parties to complete the required work out of necessity

12

and to mitigate further losses. The record reflects that FEC acknowledges that it was not Hornbeck's responsibility to hire and pay Suda and other third parties for the correctional design and installation services. However, FEC refuses to pay Suda's fees.

The MSA provides that it is subject to maritime law, except to the extent where maritime law is inapplicable; in that case, Louisiana law applies. The elements for breach of contract in maritime and Louisiana law are essentially the same: (1) contract; (2) breach of that contract; and (3) damages.[4] 17A Am. Jur. 2d Contracts § 702 (2016). The parties do not dispute whether the MSA and PO 2155141 are valid contracts. Additionally, it is undisputed that FEC did not, on its own or within the provided-for time frame, provide Hornbeck with a helideck that met ABS and CAP 437 requirements. Failure to deliver such a helideck breaches a term of PO 2155141, which in turn breaches the MSA through the MSA's incorporation of the PO terms. On this contract provision, a breach of the PO is automatically a breach of the MSA.

FEC skates by in its response to Hornbeck's motion for partial summary judgment on this contention. FEC admits in its response that it is undisputed that the original FEC design did not meet ABS and CAP 437 standards. The only statement FEC offers in

---

[4] At this time, Hornbeck seeks partial summary judgment on liability only. Hornbeck does not stipulate specific damages; it reserves that right for trial.

opposition is that "FEC did not charge Hornbeck for the additional engineering/design work. The MSA anticipates re-design work and provides that FEC must re-perform those services if they do not meet the requirements." This fails as a defense because FEC does not create a genuine issue of factual dispute.[5]

Accordingly, IT IS ORDERED that Hornbeck's partial motions for summary judgment as to FEC's breach of the Pricing Agreement, the MSA, and PO 2155141 are GRANTED and FEC's cross-motion for summary judgment is DENIED.


New Orleans, Louisiana, October 3, 2016

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] The remainder of FEC's response memorandum addresses whether Hornbeck is entitled to damages. As noted, Hornbeck does not dispute damages in this partial motion for summary judgment. Thus, the remainder of FEC's reply memorandum is inapplicable at this stage in the litigation.

14