```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

FEC HELIPORTS, LLC                                    CIVIL ACTION

V.                                                    NO. 15-4827

HORNBECK OFFSHORE OPERATORS, LLC                      SECTION "F"

                        ORDER AND REASONS

   Before the Court is plaintiff's motion to reconsider the Court's order granting defendant's motion for summary judgment as to breach of the Pricing Agreement and PO 2155141. For the following reasons, the motion is DENIED.

                            **Background**

   Plaintiff, FEC Heliports, originally filed suit against Hornbeck to recover unpaid invoices for work FEC completed on the M/V HOS Bayou heliport and for unpaid shipping costs related to work on the M/V HOS Riverbend. Hornbeck responded and filed a counterclaim against FEC alleging that: (1) The purchase order for the Riverbend helideck stipulated that FEC could not recover charges for shipping; (2) FEC breached the Master Service Agreement and Purchase Order 2155141 (PO) for the Bayou heliport because it failed to provide an American Bureau of Shipping (ABS) and CAP 437 compliant helideck as required by the PO; and (3) FEC breached the Pricing Agreement when it failed to honor Hornbeck's purchase orders for two additional helidecks.

Hornbeck moved for partial summary judgment on FEC's breach of the PO, MSA, and Pricing Agreement. The Court granted the motions for partial summary judgment and denied FEC's cross motion for partial summary judgment. The Court hereby incorporates the statement of facts from the Order and Reasons, dated October 3, 2016, where the Court granted Hornbeck's partial motions for summary judgement and denied FEC's cross motion.

FEC now moves the Court to reconsider its Order and Reasons of October 3, 2016 as to the PO and Pricing Agreement.[1]

**I.**

Motions requesting reconsideration of court orders generally fall under Rule 54(b), Rule 59(e), or Rule 60(b) of the Federal Rules of Civil Procedure. See Higgins v. Cain, No. 07-9729, 2012 WL 3309716, at *1 (E.D. La. Aug. 13, 2012); Waste Mgmt. of La., Inc. v. River Birch, Inc., No. 11-2405, 2012 WL 876717, at *1 (E.D. La. Mar. 14, 2012); Castrillo v. Am. Home Mortg. Servicing, Inc., No. 09-4369, 2010 WL 1424398, at *3-4 (E.D. La. Apr. 5, 2010). Rule 59(e) provides that a motion to alter or amend a judgment must be filed no later than twenty-eight days after the entry of judgment. Fed.R.Civ.P. 59(e). Rule 60(b), on the other hand, applies to motions filed after the twenty-eight day period, but

---

[1] Notably, FEC does not move the Court to reconsider its Order and Reasons pertaining to granting summary judgment on breach of the MSA.

2

demands more "exacting substantive requirements." See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173-74 (5th Cir. 1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1078 (5th Cir. 1994) (en banc).

Rules 59 and 60, however, apply only to final judgments. When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, then Rule 54(b) controls. Under Rule 54(b), the district court possesses the inherent power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient. See Fed.R.Civ.P. 54(b). Because the Court's October 3, 2016 Order and Reasons adjudicated fewer than all of the claims among the parties to this suit, Rule 54(b) governs. Notably, Rule 54(b) motions are construed under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. See Waste Mgmt. of La., 2012 WL 876717, at *1; Castrillo, 2010 WL 1424398, at *3.

**II.**

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" Templet v. Hydrochem, Inc., 367 F.3d 473, 478 (5th Cir. 2004) (quoting In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002)). Because of the interest in finality, Rule 59(e) motions may only be granted if the moving party shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. Id. at 478-79. Moreover,

3

Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings. See id. at 479; Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010)("[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'")(citing Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003)(quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). The grant of such a motion is an "extraordinary remedy that should be used sparingly." Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc., 114 F. App'x 137, 143 (5th Cir. Nov. 11, 2004) (citing Templet, 367 F.3d at 479). The Court must balance two important judicial imperatives in deciding whether to reopen a case in response to a motion for reconsideration: "(1) the need to bring the litigation to an end; and (2) the need to render just decisions on the basis of all the facts." Templet, 367 F.3d at 479.[2]

**III.**

---

[2] In its motion for reconsideration, FEC failed to provide the Court with the legal standard for a court to reconsider an Order and Reasons.

FEC contends that reconsideration is appropriate for two reasons: (1) FEC cannot be found to be in breach of the PO because Hornbeck now has an ABS and CAP 437 compliant helideck on the HOS Bayou; (2) The Court misinterpreted a crucial provision in the PO which led to the Court misinterpreting the effect of changing the material used on the validity of the Pricing Agreement. The Court disagrees.

### A. Purchase Order 2155141

In its motion for reconsideration as to the breach of the PO, FEC first contends that that the Court erred in determining that FEC's quote for the HOS Bayou helideck was not incorporated in the PO itself.[3] It argues that the Court misinterpreted terms of the PO, namely, whether the quote is incorporated by reference into the PO and whether parties contemplated changes to the PO. However, FEC ignores that, though those two issues may affect other portions of the Court's Order and Reasons, these issues do not address why the Court granted summary judgment as to FEC's breach of the PO.

---

[3] FEC alleges, again, that the quote for the HOS Bayou helideck was incorporated into the PO. In its Order and Reasons, the Court found that the PO was a fully-integrated contract. The Court upholds this finding, reasoning that the quote was referenced as a point of identification. Clause 10 of the PO, "Entire Contract," explicitly confirms the Court's order that the PO constitutes the entire contract. Additionally, the PO references incorporation of the MSA terms, but it does not reference incorporation of the quote terms. Therefore, FEC rehashing this incorporation by reference argument fails.

Hornbeck originally moved for partial summary judgment as to FEC's breach of the PO because FEC failed to provide an ABS and CAP 437 compliant helideck, as explicitly required under the terms of the PO. FEC's argument does not address or alter the premise upon which summary judgment was granted, namely that FEC admitted to not initially providing a helideck design that was both ABS and CAP 437 compliant; this failure coupled with Hornbeck having to hire and pay a third party to assist in a contractually compliant design is where the breach lies. Therefore, FEC's submission cannot be said to "call[] into question the correctness of the judgment." In re Transtexas Gas Corp., 303 F.3d at 581.[4]

FEC also contends that summary judgment as to the breach of the PO must be reconsidered because the parties changed the material used on the vertical supports from aluminum, as listed in the PO, to steel. FEC's argument is far less than clear, but it appears that FEC is making a timeliness argument. FEC seemingly urges that the change from the agreed-upon aluminum to steel caused a delay in the process, which FEC appears to believe is the basis for the Court finding a breach of the PO. However, this again is misguided. To underscore, the Court held that summary judgment as to the PO breach was appropriate because FEC did not, when

---

[4] The Court hereby reiterates and incorporates all findings related to the PO breach from its October 3, 2016 Order and Reasons into this Order and Reasons.

6

contractually obliged to do so, independently provide a suitable ABS and CAP 437 helideck; rather, the final design incorporated the work of a third party.[5] Therefore, because FEC's arguments fail, the Court denies reconsideration of its grant of summary judgment as to the breach of the PO.[6]

### B. Pricing Agreement

FEC discredits the Court's interpretation and application of certain terms in the PO, which are incorporated into the Pricing Agreement. FEC is correct in stating that the Court quoted portions of the PO, which FEC urges infers that the Court misinterpreted

---

[5] At the time ABS revoked its original certificate of compliance, and FEC had yet to secure CAP 437 compliance, Hornbeck sought design input from A.K. Suda, Inc. FEC agreed to incorporate Suda's work into its final design product. FEC did not pay for Suda's design services.

[6] FEC alleges that either the PO was terminated when Hornbeck sent FEC a demand letter in November 2014 and Hornbeck is entitled to post-termination damages, or the PO was not terminated and Hornbeck is not entitled to consequential damages. FEC alerts the Court that Hornbeck cannot have it "both ways." However, in the original motion for summary judgment for the breach of the PO, Hornbeck specifically reserves the determination of damages for trial. Therefore, the Court need determine whether damages are appropriate or not. On this note, in the original partial motions for summary judgment the parties never sought a determination of whether the PO was breached in November 2014. Because a reconsideration is not a chance for parties to allege new arguments to the Court, the Court is also not compelled to speculate whether Hornbeck terminated the contract in November 2014. See Templet, 367 F.3d at 478-79. At this time, the Court merely considers whether FEC breached the PO by failing to comply with a critically unconditional and important term of the PO: the requirement to provide an ABS and CAP 437 compliant helideck.

7

certain qualifying phrases. The quoted section FEC refers to reads in full:

> . . . Design also includes the structural steel members supporting the aluminum structure that will attach to the vessel in locations yet to be determined. This design also includes emergency exit stairs, walkways and platforms designed in either steel or aluminum based on final weight requirements.

Fully aware of the full statement of the quote, the Court paraphrased in a footnote, stating:

> Design also includes the structural steel members supporting the aluminum structure . . . will attach . . . at locations yet to be determined. Additionally, [Design Services] says that platforms [are to be] designed in either steel or aluminum.

The Court highlighted that the parties contemplated further design changes and decisions. Instead, FEC alleges that the Court used the pieced-together phrasing to hold that all of the structures and design elements were still undecided by the parties. (It was not until FEC moved for reconsideration that it included a diagram, which labelled and distinguished the different structures on the helideck and the original materials the parties contemplated would be used for each part).

This diagram, however, still supports the Court's holding in its Order and Reasons that the parties contemplated design changes after entering into the PO. FEC now clarifies that the steel structural members could be fewer in number than the aluminum vertical supports, as more than one vertical support could possibly

connect to one steel structural member. The Court's interpretation assumed that the number of vertical supports was also still to be considered under the "Design Services" provision in the PO. Rather, FEC notes now that only the locations of the steel structural members was yet to be determined.

    FEC contends that the aluminum vertical supports, as provided for in the PO, were changed to steel, and that caused the PO to be "altered, modified, or changed." Additionally, FEC asserts that the number of supports was also decided when it entered into the PO and Pricing Agreement, but that number also changed during the design process. Because of these changes to the PO, FEC moves the Court to reconsider its effect on the Pricing Agreement breach.

    Hornbeck responds that FEC's argument for reconsidering the breach of the Pricing Agreement is unsound because there was a mutual agreement to change the Pricing Agreement. On this record, the Court agrees.

    FEC's submissions do not persuade the Court to reconsider summary judgment. It fails to acknowledge that the change from aluminum to steel was not mutually agreed upon by the parties. What FEC neglects to realize is that FEC fulfilled a contract based on changed terms. Although the parties failed to enter into written modifications of the PO, the Court nevertheless notes that modification was mutually agreed upon because "either oral agreement or conduct can . . . prove modification" as well. Taita

9

Chem. Co. v. Westlake Styrene Corp., 246 F.3d 377, 387 (5th Cir. 2001). Here, the parties do not dispute whether the PO, which originally provided for aluminum, was changed and performed using steel. Further, the helideck provided for under the PO was in fact completed using steel. Therefore, there is no foundation for the Court to determine the parties did not mutually agree to this change order.[7]

Next, FEC correctly notes that the Pricing Agreement was based on PO 2155141, as originally signed by the parties. It follows, FEC alleges, that any subsequent changes to the PO invalidates the Pricing Agreement. While FEC gratuitously says that this proposition is "hornbook contract law," it patently fails to point to any authority for such a sweeping comment.

In its October 3, 2016 Order and Reasons, the Court held that the parties had not fully contemplated a finalized version the HOS Bayou helideck design. Without having finalized the design at the time of entering the Pricing Agreement, the Court held that on the record before it, changes were contemplated, FEC assumed the risk of price fluctuations, and, as Hornbeck suggests, FEC should be held to the pricing terms in the Pricing Agreement as originally agreed upon. A breach of the Pricing Agreement occurred when FEC

---

[7] When the change from aluminum to steel became necessary to the parties, FEC even offered a discounted price to Hornbeck upon agreeing to the change.

10

failed to honor the prices stipulated in the agreement when Hornbeck submitted two additional helideck orders. Quite simply, confusing rhetoric aside, FEC failed to honor the terms of its contract.[8]

### IV.

Accordingly, IT IS ORDERED that the plaintiff's motion for reconsideration is hereby DENIED.

New Orleans, Louisiana, November 2, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[8] FEC untimely and improperly disputes the affidavit Hornbeck submits to support its claim for damages related to the Pricing Agreement breach. As already addressed in this Order and Reasons, it is not appropriate to raise new issues through a motion for reconsideration. The Court hereby adopts its findings from the October 3, 2016 Order and Reasons as to the breach of the Pricing Agreement and the related damages.